UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN WADMAN,<br><br>       Petitioner,<br><br>-v-<br><br>UNITED STATES OF AMERICA,<br><br>       Respondent. | No. 13-cv-5487 (RJS) |
| UNITED STATES OF AMERICA<br><br>-v-<br><br>STEVEN WADMAN,<br><br>       Defendant. | No. 08-cr-1295 (RJS)<br><br>OPINION AND ORDER |

RICHARD J. SULLIVAN, District Judge:

  Petitioner Steven Wadman, proceeding *pro se*, brings this petition for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2255 (the "Petition"), challenging the sentence the Court imposed after a jury found Petitioner guilty on three counts of narcotics and weapons charges. Specifically, Petitioner challenges his sentence on the ground that he received ineffective assistance of counsel at trial. For the reasons set forth below, the Petition is denied.

I. BACKGROUND

Between 2009 and 2010, Petitioner participated in a conspiracy to distribute cocaine with Victor Carrasquillo and Carrasquillo's girlfriend, Tara McCaffrey.[1] In August 2009, Carrasquillo was arrested on the initial charges in this case, and, while in prison, he asked Petitioner and McCaffrey to perform certain duties to continue their drug trafficking business. Specifically, Carrasquillo asked Petitioner to find a cocaine supplier that could keep Carrasquillo's business going while Carrasquillo was in prison. (Trial Tr. at 283:24–284:4.) When Petitioner failed to find a reliable supplier, he began providing McCaffrey with cocaine himself. (*Id.* at 259:22–260:1.)

While in prison, Carrasquillo became concerned about the police searching McCaffrey's apartment and finding his stash of firearms, which Carrasquillo used in furtherance of his drug trafficking business. (*Id.* at 274:7–16, 305:21–25.) As McCaffrey testified, the guns kept by Carrasquillo went "in hand with the business of narcotics," since they helped him "give off a macho personality," which was useful in maintaining control over his operation. (*Id.* at 274:11, 16.) Thus, Carrasquillo asked McCaffrey to clean the guns to remove any fingerprints and place them in a storage unit. (*Id.* at 282:7–25.) Subsequently, McCaffrey cleaned the guns and asked Petitioner to help her collect and place in storage two suitcases from her apartment. (*Id.*) Notwithstanding the fact that McCaffrey informed Petitioner that the suitcases contained firearms

---

[1] Unless otherwise indicated, citations to docketed items refer to those materials that appear in Petitioner's criminal case, *United States v. Wadman*, No. 08-cr-1295 (RJS). However, the Court also cites to materials that appear in Petitioner's civil case, *Wadman v. United States*, No. 13-cv-5487 (RJS), including the Petition (No. 13-cv-5487, Doc. No. 1 ("Pet.")). In ruling on the Petition, the Court has also considered the government's opposition (Doc. No. 105 ("Opp'n")) and Petitioner's reply (No. 13-cv-5487, Doc. No. 8 ("Reply")). The Court also relies on the transcripts from the following proceedings in the criminal case: the final pretrial conference of Petitioner (("PTC Tr."), dated January 5, 2011; the trial of Petitioner ("Trial Tr."), dated Jan. 10, 11, 13, and 14, 2011); and the sentencing of Petitioner ("Sent. Tr."), dated June 29, 2011. Finally, since Petitioner is proceeding *pro se*, the Court construes his Petition liberally. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam), Nevertheless, in light of the jury's guilty verdict, the Court draws all factual inferences in favor of the government. *See Quartararo v. Hanslmaier*, 186 F.3d 91, 96 (2d Cir. 1999).

belonging to Carrasquillo and warned Petitioner that "God forbid something happens legally," Petitioner would "take the responsibility for it," Petitioner agreed to help and subsequently placed the suitcases into a storage unit under his own name. (*Id.* at 268:19–269:8, 270:25–271:13; *see also id.* at 128:3–8.) In addition to Carrasquillo's weapons, the suitcases contained related drug paraphernalia, including scales, cutting agents, and bags for packaging cocaine. (*Id.* at 267:3–7.)

In July 2010, pursuant to two search warrants, Drug Enforcement Administration ("DEA") agents conducted a search of McCaffrey's apartment and the storage unit, seizing the two suitcases that contained the firearms and drug paraphernalia. (*Id.* at 129:22–148:1.) On July 22, 2010, the government filed a two-count complaint against Petitioner, charging him with participation in a conspiracy to distribute and possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846 ("Count One") and unlawful possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (2) ("Count Two"). (Doc. No. 1.) The next day, Petitioner was arrested on these charges, and, during the arrest, he admitted that he had rented the storage unit "for Victor [Carrasquillo]." (Trial Tr. at 149:18–21.) Subsequently, on August 17, 2010, a grand jury in the Southern District of New York returned a superseding indictment, S3 08-cr-1295, charging Petitioner with the same two counts. (Doc. No. 41.)[2] Finally, on November 18, 2010, the grand jury returned another superseding indictment, S4 08-cr-1295, which again included Counts One and Two and added a third count charging Petitioner with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1) ("Count Three"). (Doc. No. 50.)

---

[2] The S3 Superseding Indictment also charged Carrasquillo and McCaffrey with the same two counts and charged Carrasquillo and co-defendant Karen Blake with two additional counts of conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B), (h) and conspiracy to commit currency structuring in violation of 18 U.S.C. § 371 and 31 U.S.C. § 5324(a)(3).

On January 10, 2011, in order to avoid prejudicing Petitioner with respect to Counts One and Two by making reference to his prior felony conviction, which is an element of Count Three, *see* 18 U.S.C. § 922(g)(1), the Court began a bifurcated trial, in which the jury heard evidence and rendered a verdict on Counts One and Two prior to hearing evidence relating to Count Three.  At the close of evidence on Counts One and Two, Petitioner moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the government's evidence was "legally insufficient to establish [Petitioner's guilt] beyond a reasonable doubt . . . ."  (Trial Tr. at 701:2–9.)  In particular, with respect to Count Two, Petitioner argued that the evidence that the firearms in the storage locker were used in furtherance of a drug conspiracy was "nonexistent." (*Id.* at 701:10–18.)  The Court denied the motion on the record, finding that there was sufficient evidence as to Count One and, in relation to Count Two, that there was "sufficient testimony from Ms. McCaffrey," who had testified for the government pursuant to a cooperation agreement, "for the jury to conclude that the guns were used in connection with or in furtherance of the narcotics trafficking crime that was alleged in Count 1."  (*Id.* at 702:25–703:16.)

On January 14, 2011, after approximately four days of trial, the jury returned a guilty verdict against Petitioner on Counts One and Two. (*Id.* at 850:19–851:10.)  On the same day, after hearing additional evidence and instructions relating to Count Three, the jury returned a guilty verdict against Petitioner on the felon-in-possession charge. (*Id.* at 878:18–23.)  At the sentencing hearing held on June 29, 2011, the Court found that:  (1) Petitioner's offense level was 37 pursuant to U.S.S.G. § 4B1, (2) Petitioner's criminal history category was VI, and (3) Petitioner's applicable Guidelines Range was 420 months to life imprisonment, a calculation driven largely by Petitioner's career offender status.  (Sent. Tr. 9:20–10:19.)  Furthermore, Petitioner faced a maximum sentence of life imprisonment on Count One and a mandatory minimum sentence of 10

4

years and a mandatory consecutive sentence of five years on Count Two.  (*Id.* at 10:7–19.) Nonetheless, due to the fact that Petitioner was far less culpable this his co-conspirator Victor Carrasquillo, who received a sentence below Petitioner's 15-year mandatory minimum sentence, the Court found that a sentence of 183 months' imprisonment was sufficient but not more than necessary to meet the sentencing objectives set forth in 18 U.S.C. § 3553.  (*Id.* at 25:21–27:20.)

On July 8, 2011, Petitioner filed a timely notice of appeal, challenging the sufficiency of the evidence to support the jury's guilty verdict on Count Two.  (Doc. No. 93.)  On November 5, 2012, the Second Circuit affirmed the judgment as to Count Two, concluding that "the government adduced sufficient evidence" demonstrating that Petitioner possessed firearms in furtherance of a drug conspiracy.  *United States v. Carrasquillo*, 487 F. App'x 667, 669 (2d Cir. 2012).  On February 19, 2013, the United States Supreme Court denied Petitioner's petition for writ of certiorari.  *See Wadman v. United States*, 133 S. Ct. 1303 (2013).  Thereafter, Petitioner filed the instant Petition, arguing that his trial counsel was constitutionally defective and that his sentence should be vacated or, in the alternative, the Court should conduct an evidentiary hearing.

## II.  LEGAL STANDARD

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under Section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted).  "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a

conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted).  A claim of ineffective assistance of counsel, however, is one permissible basis for bringing a Section 2255 petition.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel.  *See* U.S. Const. amend. VI.  When challenging the effectiveness of counsel's assistance, a party must demonstrate that (1) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong.  *See Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

As for *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).  The court starts from the strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel."  *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 690–91).  Because there are many different ways to provide effective assistance in any given case, and "[e]ven the best criminal defense attorneys would not defend a particular client the same way," there is a strong presumption that counsel rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689.

With respect to *Strickland*'s second prong, a "reasonable probability" that the outcome would have been different but for counsel's deficient performance is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  An "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 691).  In other words, to find prejudice, a court must conclude that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* (quoting *Strickland*, 466 U.S. at 686).

### III.  DISCUSSION

Petitioner alleges that his trial counsel, Gregory Cooper, rendered ineffective assistance of counsel by failing to (1) investigate and research Petitioner's case, (2) file a motion to suppress evidence seized from the storage unit, (3) object to the Court's imposition of judgment on Count Two since Petitioner believes it is a "non-existent offense," and (4) object to the jury's alleged failure to find Petitioner guilty beyond a reasonable doubt as to each element of Count Two.  For the reasons set forth below, the Court rejects each of Petitioner's arguments.

#### A.  Failure to Investigate and Research

Petitioner claims that his trial counsel was ineffective because he failed to "investigate and research Petitioner's case by a thorough and close examination and systematic inquiry of the surrounding facts."  (Pet. at 5, Reply at 2.)  The Court finds Petitioner's argument to be as baseless as it is generic.

As an initial matter, counsel's specific decisions with respect to research and investigation are afforded a high level of deference. *See Strickland*, 466 U.S. at 691 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). Here, Petitioner has failed to demonstrate that his counsel's conduct should not be afforded such deference. To the contrary, having presided over all aspects of the case, from the initial indictment to sentencing, the Court finds that Petitioner's counsel was well prepared and highly competent.

For example, in the final pretrial conference held on January 5, 2011, counsel filed an opposition to the government's motion *in limine* and argued, albeit unsuccessfully, that the presentation of evidence related to the drug conspiracy before Petitioner became involved in December 2009 would be prejudicial and confusing to the jury. (PTC Tr. at 2:13–17, 8:3–9:24.) Furthermore, throughout trial, counsel clearly possessed a thorough grasp of the evidence and the facts and circumstances surrounding Petitioner's charges. For instance, counsel relied on evidence produced during discovery to conduct a lengthy cross-examination of Special Agent Conwell, who, along with other DEA agents, conducted a search of McCaffrey's apartment and the storage unit. In particular, during the cross-examination, Conwell revealed that there was no fingerprint or DNA analysis of the suitcases located in the storage unit. (Trial Tr. at 199:5–7.) Petitioner's counsel also conducted a thorough and nearly full-day cross-examination of McCaffrey, the government's cooperating witness whose testimony tied Petitioner to the drug conspiracy and firearms charge, in an effort to undermine her credibility. (*See, e.g.*, *id.* at 463:3–13 (confirming that McCaffrey lied to the government in her proffer sessions); *id.* at 439:9–440:18 (confirming that McCaffrey lied to DEA agents when they searched her apartment); *id.* at 520:3–9 (confirming that McCaffrey hoped to avoid a 15-year sentence by testifying against Petitioner); *id.* at 600:8–

18, 602:1–6 (confirming that McCaffrey and Petitioner never carried a gun when they purchased or sold drugs).) And in his summation, counsel attempted to undermine McCaffrey's credibility and distance Petitioner from the guns and drugs located in the storage unit. (*See, e.g.*, *id.* at 740:8–19 (noting that McCaffrey frequently said "I don't remember" in response to questions); *id.* at 743:13–745:1 (discussing McCaffrey's lies); *id.* at 758:5–19, 762:13–763:1 (questioning the evidence related to the firearms charge).)

Counsel was equally well prepared and competent during sentencing. For example, through his defense submission and at the sentencing hearing, counsel asked the Court to impose a sentence below the Guidelines range of 420 months' imprisonment to life, especially in light of Petitioner's conduct as compared to that of Petitioner's more culpable co-conspirator, Carrasquillo. (Sent. Tr. at 13:8–19:2.) Counsel also highlighted Petitioner's health and age, as well as the advanced age and ill health of his mother, who depended on Petitioner for assistance in coping with cancer. (Sent. Tr. at 12:19–19:1.) The Court acknowledged that it "agree[d] with most of everything Mr. Cooper has said" regarding Petitioner's sentence and subsequently sentenced Petitioner to 183 months' imprisonment – which was just three months above Petitioner's mandatory minimum sentence and was well below his Sentencing Guidelines range of 420 months to life imprisonment. (*Id.* at 26:23–27:19.) In sum, the record demonstrates that Petitioner's counsel was diligently prepared throughout Petitioner's criminal prosecution, and in no sense could it be argued that his conduct fell below an objective standard of reasonableness.

With respect to *Strickland*'s second prong, Petitioner has also failed to demonstrate that his counsel's actions prejudiced him. Significantly, Petitioner does not even suggest that his counsel's alleged failure to research or investigate his case prejudiced him in connection with Count One. (*See* Reply at 3.) Nor could he, as the government clearly produced sufficient evidence such that

a reasonable jury could find that Petitioner participated in the drug conspiracy. (*See, e.g.*, Trial Tr. at 259:19–260:1 (testimony from McCaffrey indicating that Petitioner supplied her with cocaine to sell); 311:10–11 (same)).

In relation to Counts Two and Three, Petitioner makes the conclusory assertion that "had my attorney provided the court with the relative information, which I provided him with, the court would not have sentenced me for the alleged [firearms] violations." (Reply at 3.) Petitioner further claims that his counsel failed to investigate and introduce evidence showing that Petitioner did not (1) "possess[] any firearms or ever use[] any firearms in furtherance of a drug trafficking crime," including the firearms in the storage unit, (2) have the keys to the storage unit, or (3) touch, look inside, or place any fingerprints on the suitcases. (Reply at 2.) As a result, Petitioner argues that his counsel's failure to investigate prevented him from "properly represent[ing] and defend[ing] Petitioner" throughout the case, from the filing of pretrial motions to sentencing. (Pet. at 5.)

These conclusory assertions fail to demonstrate prejudice, especially in light of the evidence presented at trial which connected the drug conspiracy to the guns kept in the storage locker. Put simply, possession of a firearm facilitates a drug trafficking crime when the "gun afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005) (noting that, when drugs and guns are found together, "[p]ossession of a firearm to defend a drug stash clearly furthers the crime of possession with intent to distribute the contents of that stash"). As the Second Circuit concluded in its opinion affirming the conviction on Count Two, the jury reasonably found, among other things, that: Petitioner "physically carried out Carrasquillo's instructions in storing the guns"; Petitioner "had actual and constructive possession of the guns"; and the weapons "were stored with drug paraphernalia," which McCaffrey testified went "in hand" with the business of

10

narcotics." *Carrasquillo*, 487 F. App'x at 669.  Indeed, McCaffrey's testimony alone was sufficient to establish the nexus between the weapons and the drug conspiracy.  *See Hanslmaier*, 186 F.3d at 96 (instructing that in a "habeas proceeding all the evidence must be viewed in the light most favorable to the [government]").  Furthermore, with respect to Count Three, Petitioner had already entered into a stipulation that he had been convicted of a felony, and his admission to the DEA at the time of his arrest, coupled with McCaffrey's testimony that she informed Petitioner as to the contents of the suitcases, provided overwhelming evidence of Petitioner's guilt.  (Trial Tr. at 861:4–863:5.)  It is therefore difficult to fathom what counsel could have done to overcome or obscure this powerful evidence of Petitioner's guilt with respect to Counts Two and Three.

Accordingly, because Petitioner has failed to demonstrate that counsel's conduct constituted deficient performance that prejudiced him, Petitioner's claim must be denied as to his counsel's alleged failure to research and investigate his case.

### B.  Failure to File a Motion to Suppress

Petitioner next argues that his trial counsel was ineffective because he failed to file a motion to suppress the evidence collected during the DEA search of his storage unit. (Pet. at 6.)  The Court finds Petitioner's argument, which is premised on the groundless assertion that DEA agents did not have a search warrant at the time they searched the storage unit (*id.*), to be entirely unpersuasive.  In fact, Special Agent Conwell testified that the DEA received a search warrant *before* searching the storage unit.  (Trial Tr. at 129:20–130:3, 192:25–193:15.)  Petitioner has offered no evidence to undermine Special Agent Conwell's testimony or to provide an additional basis for a motion to suppress.  As a result, Petitioner has failed to demonstrate that his counsel's failure to file a motion to suppress constituted deficient performance or prejudiced him.  *See United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987) (rejecting ineffective assistance of counsel claim premised on counsel's decision not to file a meritless motion to suppress); *see also Aparicio*

11

*v. Artuz*, 269 F.3d 78, 99 n.10 (2d Cir. 2001) (finding that because petitioner's double jeopardy claim was meritless, his "trial counsel was not ineffective for failing to raise it"); *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (affirming the district court's denial of an evidentiary hearing where the court, which "having tried the case, was intimately familiar with the trial proceedings and the events and circumstances surrounding them," concluded that "a hearing would not offer any reasonable chance of altering its view of the facts"). Therefore, Petitioner has failed to establish ineffective assistance on this alternative basis.

### C. Count Two Is a "Non-Existent" Offense

Petitioner next appears to claim ineffective assistance based on his attorney's failure to file a motion to vacate the judgment against Petitioner on Count Two pursuant to Federal Rule of Criminal Procedure 33. Specifically, Petitioner asserts that: (1) Count Two is a "non-existent" offense, and (2) the grand jury never charged him with Count Two. (Pet. at 8.) Petitioner's arguments are totally baseless. The S4 superseding indictment clearly indicates that the grand jury charged Petitioner with violating 18 U.S.C. § 924(c)(1)(A)(i) and 2. (Doc. No. 50 at 2.) This section, as articulated in the United States Code, prohibits any person from possessing a firearm in furtherance of a drug trafficking crime and, therefore, is not a "non-existent" offense. *See United States v. Bryant*, 711 F.3d 364, 370 (2d Cir. 2013) (recognizing the constitutionality of the crime of "possessing a firearm in furtherance of a drug trafficking crime"). Furthermore, as explained above and as the Second Circuit affirmed on appeal, the government produced sufficient evidence from which a reasonable jury could find Petitioner guilty of Count Two beyond a reasonable doubt. *Carrasquillo*, 487 F. App'x at 669. Petitioner's claim of ineffective assistance on these bases therefore must be rejected.

D. Failure to Require the Jury to Find Petitioner Guilty as to Each Element of Count Two

Finally, Petitioner makes the equally groundless argument that his counsel was ineffective because he failed to "object and raise the issue of Petitioner's right to a jury determination of every single element [of Count Two] beyond a reasonable doubt." (Pet. at 9.) Once again, Petitioner's assertion is completely belied by the record, which reflects that the Court clearly instructed the jury that, in order to find Petitioner guilty of Count Two, it find that the government had proven each element of Count Two beyond a reasonable doubt. (*See* Trial Tr. at 802:15–803:3.) Accordingly, Petitioner's argument is based on a mischaracterization of the record and must be rejected.

IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT the Petition is denied in its entirety. The Clerk of the Court is respectfully directed to terminate the motions located at docket numbers 99 and 115 in case number 08-cr-1295, to close case number 13-cv-5487, and to mail a copy of this order to Petitioner.

Furthermore, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be undertaken in good faith.

SO ORDERED.

Dated:   July 20, 2016
         New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/20/16

13